UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEFFREY D. COCHRAN,<br><br>   Plaintiff,<br><br>  v.<br><br>ILLINOIS STATE TOLL HIGHWAY AUTHORITY, et al.,<br><br>   Defendants. | No. 14 CV 9145<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

In December 2013, Jeffrey Cochran, a lifelong Ohio resident, drove to Chicago to visit family. Unfamiliar with Illinois's open-road toll highway system, he inadvertently failed to pay three tolls. Had he paid those missed tolls online or by mail within seven days, no fine would have been assessed. But he was unaware of this grace period and, as a result, paid $60 in fines ($20 per missed toll). He sued the Illinois State Toll Highway Authority and members of its Board of Directors. He alleges that the Authority educates Illinois residents to a greater extent than non-residents on the operation of the toll system. Allegedly, the resulting information asymmetry results in out-of-state residents being disproportionately fined for missing tolls and not paying them within the grace period.

Cochran's allegations do not plausibly suggest that the Authority is violating the Constitution. Accordingly, the Authority's and the individual Board members' motions to dismiss are granted.

## I. Legal Standards

In deciding whether to dismiss Cochran's claim under Federal Rule of Civil Procedure 12(b)(6), I construe the complaint in the light most favorable to Cochran, accept as true all well-pleaded facts, and draw reasonable inferences in his favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). The complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal marks omitted). To avoid dismissal, the complaint must "state a claim to relief that is plausible on its face." *Yeftich*, 722 F.3d at 915 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Yeftich*, 722 F.3d at 915 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## II. Facts

### A. The Illinois Toll Highway System

The Illinois State Toll Highway Authority is an administrative agency of the State of Illinois. FAC ¶ 5. The Authority operates the Illinois toll highway system. FAC ¶ 5. In that system, drivers can pay tolls using cash, but to do so they must use designated cash lanes (which can require exiting the main roadway, paying the toll, and merging back into traffic downstream). FAC ¶ 21. In contrast, drivers of cars equipped with electronic transponders can maintain freeway speeds: tolls are automatically paid as they pass tolling stations. FAC ¶ 21. Transponders are

available to both residents and non-residents. FAC ¶¶ 3, 15–16. A large majority (80%) of drivers on Illinois's toll highways use transponders. FAC ¶ 23. Cochran alleges that "most cash-paying customers are out-of-state residents." FAC ¶ 23.

To design the road signs that instruct drivers how to pay tolls, the Authority conducted research in which users viewed multiple prototype signs and were asked which ones best conveyed the tolling instructions. FAC ¶ 27. Based on that research, the Authority selected the most visible signs. FAC ¶ 27. The Authority conducted a campaign to educate Illinois residents on the procedures. FAC ¶ 23.

The driver of a car not equipped with a transponder must use the designated cash lanes—if he drives through a lane meant for cars with transponders, he'll miss paying the toll. FAC ¶ 30. If he knows the date, time, and location, he can pay the missed toll online or by mail. FAC ¶¶ 25, 31. No fine is assessed if he pays within seven days. FAC ¶ 31. Even if he doesn't pay within seven days, no fine is assessed until the third such violation in a two-year period. FAC ¶ 31. After a third violation, the Authority commences "toll evasion recovery." FAC ¶ 32. A notice is mailed to the car's owner; the amount owing is the sum of the missed tolls plus a fine for each missed toll. FAC ¶ 32. The notice informs the owner that he has 21 days in which to pay in full or contest the charge at a hearing. FAC ¶ 32. The notice also informs the owner that "[t]oll evasion is a public, strict liability and vicarious liability violation. Therefore, the following are not legal defenses or mitigating factors under Illinois law: (1) the violation notice wasn't mailed sooner, (2) the driver did not intend to miss the payment or go through [a transponder] lane, or (3) someone else was

driving the vehicle." FAC ¶ 32. Cochran alleges that the Authority collects $33 million per year through toll evasion recovery, and that an "inordinate amount" of that comes from non-residents. FAC ¶ 43.

### B. Cochran's Missed Tolls

In December 2013, Cochran drove from northeast Ohio to Chicago. FAC ¶¶ 35, 37. When he crossed into Illinois, he received no information on how the Illinois toll system worked. FAC ¶ 37. Because he was unaware that he had to exit the main roadway, pay his toll using the designated cash lane, and then merge back onto the roadway, Cochran missed three tolls. FAC ¶¶ 38–41. He realized that he might have missed tolls, so he called the Authority's toll-free phone number. FAC ¶ 40. Because the Authority's database had not yet been updated, the person Cochran spoke to found no information about his missed tolls. FAC ¶ 40.

On January 30, 2014—after the expiration of the grace period on Cochran's third violation—the Authority mailed a notice stating that Cochran owed $64.50 (three tolls of $1.50 each, plus three fines of $20 each). FAC ¶ 41. Cochran called the Authority to find out what his options were, and was told he needed to pay in full immediately or he would face additional fines. FAC ¶ 42. He paid. FAC ¶ 42. He later attempted to contest the fines, but was told that he could not do so because he had already paid them. FAC ¶ 42.

## III. Analysis

Cochran does not complain about tolls; he complains about the *fines* imposed for not paying missed tolls within seven days. [25] at 9. He complains that the Authority collected fines despite giving him inadequate notice about the tolling

4

procedures and the grace period. Doing so, Cochran contends, violates the Constitution by: (1) denying him due process; (2) denying him equal protection of the law; (3) denying him the privileges and immunities of citizenship; (4) burdening or discriminating against interstate commerce; and (5) denying him the fundamental right to travel. FAC ¶¶ 9, 66(d)–(g); [25]. Cochran also contends that the Authority was unjustly enriched at his expense. FAC ¶¶ 78–85.

### A. Due Process

#### 1. Substantive Due Process

"[S]ubstantive due process is applicable only when the government deprives a person of a 'fundamental' right. *Markadonatos v. Vill. Of Woodridge*, 760 F.3d 545, 554 (7th Cir. 2014) (Easterbrook, J., concurring). No such right is implicated here, where the deprivation is a $20 fine for each missed toll. *Id.* (a plaintiff is not deprived of a fundamental right when $30 is arbitrarily taken from him). The Seventh Circuit's opinion in *Idris v. City of Chicago*, 552 F.3d 564, 565–66 (7th Cir. 2009) is instructive. There, plaintiffs argued that their substantive due process rights were violated by Chicago's red light camera ordinance, which imposed a $90 fine on the owner of a car that ran a red light, even if the owner was not the offending driver. The court rejected their argument: "Plaintiffs contend that vicarious liability offends the substantive component of the due process clause, but that argument is a dud. Substantive due process depends on the existence of a fundamental liberty interest, and no one has a fundamental right to run a red light or avoid being seen by a camera on a public street. The interest at stake is a $90 fine for a traffic infraction, and the Supreme Court has never held that a property

5

interest so modest is a fundamental right." *Id*. Similarly, substantive due process is not implicated in this case.

## 2. Procedural Due Process

To bring a procedural due process claim, Cochran must allege a cognizable property interest, a deprivation of that property interest, and a denial of due process. *Clancy v. Office of Foreign Assets Control of United States Dep't of Treasury*, 559 F.3d 595, 600 (7th Cir. 2009). Cochran admits that the notice he received (after his third violation) informed him of his right to a hearing. FAC ¶ 32. Instead of requesting a hearing, Cochran chose to pay his fines; he complains that a hearing would have been useless because he had no substantive defense. FAC ¶ 32; [25] at 10.[1] Cochran cannot complain about toll evasion as a strict-liability offense—that is constitutional. *See Karlin v. Foust*, 188 F.3d 446, 475–78 (7th Cir. 1999) (strict forfeiture liability for physicians who fail to discuss required topics with patients seeking abortions); *Stepniewski v. Gagnon*, 732 F.2d 567, 570–73 (7th Cir. 1984) (strict liability, with fines up to $5,000 and imprisonment up to one year, for violating home-improvement laws); *United States v. Freed*, 401 U.S. 601, 607–10 (1971) (strict liability, with fines up to $10,000 and imprisonment up to 10 years, for possessing an unregistered gun). Because strict liability for this type of offense is

---

[1] Even if an Authority employee convinced Cochran to pay his fines rather than request a hearing (*see* FAC ¶ 42), that would not state a procedural due process claim because toll evasion is a strict-liability offense and the grace period had already expired—in other words, Cochran had no substantive defense. *See Rector v. City & County of Denver*, 348 F.3d 935, 944 (10th Cir. 2003) ("Unless a person asserts some basis for contesting a governmental deprivation of life, liberty, or property, he is not injured by defective procedures he has no occasion to invoke.") (citing *Codd v. Velger*, 429 U.S. 624 (1977)).

constitutional, there is no due process violation if, as Cochran complains (FAC ¶ 28), the road signs were difficult for him to understand.

Cochran—like all others—was given more process than was required: he was given a grace period for each missed toll, and no fine was assessed until his third violation. *Compare Sutton v. City of Milwaukee*, 672 F.2d 644, 647–48 (7th Cir. 1982) (no due process violation from city's practice of impounding illegally parked cars before holding a hearing, nor from city's limitation of that policy to cars whose owners have two or more unpaid parking or traffic tickets). Cochran has not stated a procedural due process claim.

### B. Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment states that no state shall deny to any person within its jurisdiction the equal protection of the laws. Equal protection scrutiny is triggered when a regulation draws distinctions among people based on a person's membership in a suspect class or based on a denial of a fundamental right. If either a suspect class or fundamental right is implicated, the government's justification for the regulation must satisfy the strict scrutiny test to pass muster under the Equal Protection Clause. But if neither condition is present, the proper standard of review is rational basis." *Sweeney v. Pence*, 767 F.3d 654, 668 (7th Cir. 2014) (internal marks and citations omitted). As discussed above, no fundamental right is implicated here. And Cochran has not identified a suspect class, so rational basis review is appropriate. That means that the Equal Protection Clause is violated only if the Authority's actions bear no reasonable relation to any proper purpose. *Id.* at 670.

7

Cochran is explicit that he does not challenge the Authority's practice of charging tolls to maintain the highways. [25] at 9. But the Authority's ability to raise funds to maintain the highways would be curtailed if it permitted drivers to evade tolls without repercussion. Toll evasion recovery, in some form, is therefore related to a proper purpose. Although Cochran may have preferred a longer grace period, or a grace period that started when the notice was mailed, as opposed to when the toll was missed, rational-basis review does not inquire as to the "general wisdom" of the policy or require the Authority to use the "most effective means" to achieve its desired end. *Scariano v. Justices of the Supreme Court*, 38 F.3d 920, 925 (7th Cir. 1994).

Cochran complains that because he didn't understand the road signs, and because the Authority's representative could not give him certain information over the phone, he was incapable of avoiding the $20 fines. FAC ¶ 32; [25] at 10. Those complaints do not state a claim for an equal-protection violation. *See Idris*, 552 F.3d 564 (no equal protection violation where fine is assessed on the owner of a car that ran a red light, even if the owner was not the driver). Nor is equal protection offended by the Authority's policy of assessing fines only after three violations. *Sutton*, 672 F.2d at 648 (where city impounds illegally parked cars, no equal protection violation results from limiting that policy to cars whose owners have two or more parking or traffic tickets). Cochran has not stated a claim under the Equal Protection Clause.

## C. Privileges and Immunities

The Privileges and Immunities Clause was "designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy." *Toomer v. Witsell*, 334 U.S. 385, 395 (1948). The clause is not violated unless the alleged discrimination implicates a fundamental right—one of those privileges and immunities "bearing upon the vitality of the Nation as a single entity[.]" *United Bldg. & Constr. Trades Council v. Mayor of Camden*, 465 U.S. 208, 218 (1984). Even then, the clause is not violated if the State shows that "substantial reasons" exist for the difference in treatment and the "degree of discrimination bears a close relation to them." *Id*. at 222. The clause "does not require that a State tailor its every action to avoid any incidental effect" on out-of-state residents. *McBurney v. Young*, 133 S.Ct. 1709, 1716 (2013).

Cochran has not alleged discrimination that implicates a fundamental right. The Authority's tolling practices do not distinguish between residents and non-residents: drivers in both categories must pay tolls and are subject to fines if they don't. Cochran complains that the Authority better informed Illinois residents about the tolling practices. FAC ¶ 23; [25] at 8. But *McBurney* forecloses any argument that any resulting information asymmetry bears upon the vitality of the Nation as a single entity. In *McBurney*, the plaintiffs complained that by making certain records available only to its citizens, Virginia created an "information asymmetry," thereby burdening non-citizen litigants' access to the court system. *Id*. at 1717. The Court rejected the argument, stating that "[t]he Privileges and Immunities Clause does not require States to erase any distinction between citizens and non-citizens that

9

might conceivably give state citizens some detectable litigation advantage." *Id*. Cochran's "information asymmetry" allegations—made not in the context of litigation, but the more quotidian context of highway tolls—do not state a claim under the Privileges and Immunities Clause.

### D. Commerce Clause

The Commerce Clause, which empowers Congress to "regulate Commerce . . . among the several States," does not expressly constrain the States. *McBurney*, 133 S.Ct. at 1719. But the "dormant" or "negative" Commerce Clause jurisprudence "significantly limits the ability of States and localities to regulate or otherwise burden the flow of interstate commerce." *Id*. The jurisprudence is "driven by a concern about economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Id*. (internal marks omitted). "The common thread among those cases in which the Court has found a dormant Commerce Clause violation is that the State interfered with the natural functioning of the interstate market either through prohibition or through burdensome regulation." *Id*. at 1720 (internal marks omitted).

Again, the Authority's tolling practices do not distinguish between Illinois citizens and non-citizens. Cochran contends that the Authority violated the Commerce Clause by better informing Illinois citizens about the tolling procedures and grace period. That argument—like Cochran's Privileges and Immunities Clause argument—is foreclosed by *McBurney*, which held that Virginia's law making certain documents available only to its citizens, neither regulates nor burdens interstate commerce, "it merely provides a service to local citizens that would not

10

otherwise be available at all." *Id.*; *see also Doran v. Mass. Tpk. Auth.*, 348 F.3d 315, 320 (1st Cir. 2003) (Massachusetts Turnpike Authority's toll program, which offered discounts to frequent travelers, treated "in-state and out-of-state vehicles with an even hand," and therefore did not violate the Commerce Clause); *Saunders v. Port Auth.*, 2004 U.S. Dist. LEXIS 8482 (S.D.N.Y. 2004) (same, for New York and New Jersey).

### E. Right to Travel

The Constitution protects a fundamental right to interstate travel. *Saenz v. Roe*, 526 U.S. 489, 500–03 (1999). The Supreme Court has variously found this right in the Privileges and Immunities Clause, the Commerce Clause, and the Equal Protection Clause. *Att'y Gen. of New York v. Soto-Lopez*, 476 U.S. 898, 902 (1986); *Zobel v. Williams*, 457 U.S. 55, 67 (1982) (Brennan, J., concurring); *see also Saenz*, 526 U.S. at 502–03. Regardless of its source, the right is "firmly established" and has been "repeatedly recognized" by the Court. *Soto-Lopez*, 476 U.S. at 903.

Cochran's right-to-travel claim is foreclosed by *Schor v. City of Chicago*, 576 F.3d 775 (7th Cir. 2009). In *Schor*, the plaintiffs challenged a Chicago ordinance that banned cellphone use while driving. The district court dismissed the complaint under Rule 12(b)(6) and did not permit amendment. The Seventh Circuit affirmed, finding that the addition of a right-to-travel claim would be futile. *Id.* at 780. The court's opinion is instructive:

> The plaintiffs assert that the Ordinance "unduly burdens" their right to travel by subjecting them to "seizures and fines without proper notice" and by using allegedly conflicting signage with respect to cell phone usage. . . . The plaintiffs say that the Ordinance infringes their right to travel because it requires

11

motorists to be "aware of a local ordinance inconsistent with ordinances of neighboring municipalities," and because roadside signs . . . "induce motorists driving in Chicago to believe that they may use their mobile telephones while driving." What this has to do with anyone's right to travel escapes us. Different jurisdictions often proscribe different types of conduct, and persons entering any specific place do so at their peril—or, to put it more mildly, do so knowing that they are obliged to inform themselves about any relevant rules of the road. The Chicago Ordinance does not ban anyone's travel. It simply regulates the act of driving a motor vehicle, in the same way that a licensing system or vehicle registration system does, to name two examples. Indeed, if the plaintiffs want or need to travel while using their cell phone, alternate travel options exist, such as a bus or a taxi. Given that the plaintiffs have not demonstrated how the Ordinance could plausibly infringe any right to travel, the district court did not abuse its discretion in denying them leave to amend their complaint to add this claim.

*Id*. at 780. The same reasoning applies here: the Authority's tolling practices do not ban anyone's travel; Cochran was obliged to inform himself of those procedures; and alternative options exist (including using a transponder). *See also Chavez v. Ill. State Police*, 251 F.3d 612, 649 (7th Cir. 2001) (the right to travel is not implicated by traffic stops allegedly made through racial profiling because those practices do "nothing to prevent [plaintiff] from entering or leaving the state."); *Saunders*, 2004 U.S. Dist. LEXIS 8482 (dismissing claim that offering toll discounts to transponder users violated the plaintiff's right to travel, noting that non-residents could enroll in the transponder program).[2]

---

[2] Contrary to Cochran's argument ([25] at 6), strict scrutiny does not apply in this case. Strict scrutiny applies in right-to-travel cases "only where a State's law operates to penalize those persons who have exercised their constitutional right of interstate migration[.]" *Soto-Lopez*, 476 U.S. at 905–06. That is not the case here, where Cochran complains about a small fine imposed on residents and non-residents alike. *See Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 258 (2d Cir. 2013); *Evansville-Vanderburgh Airport Auth. Dist. v. Delta Airlines, Inc.*, 405 U.S. 707, 714 (1972).

### F. Unjust Enrichment and Claims Against Individual Board Members

In addition to the Authority, Cochran seeks to hold individual Board members liable for the alleged violations of his constitutional rights. *See* [26]. And Cochran pleaded a state-law unjust-enrichment claim, contending that the collection of fines is "unjust" because it violates the Constitution. FAC ¶¶ 78–85. Because Cochran's constitutional claims are rejected, these claims are rejected too. His claims against the individual Board members also warrant dismissal because he has made no specific, non-conclusory allegations about any individual's contribution to the alleged violations. *See Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011) ("Section 1983 creates liability only for a defendant's personal acts or decisions.").

## IV. Conclusion

For the reasons above, the motions to dismiss [21] and [22] are granted. The complaint is dismissed without prejudice to amend by April 17, 2015. If no amendment is filed by April 17, 2015, the dismissal will convert to one with prejudice.

ENTER:

Manish S. Shah
United States District Judge

Date: 3/27/15