UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEFFREY D. COCHRAN,<br><br>    Plaintiff,<br><br>    v.<br><br>ILLINOIS STATE TOLL HIGHWAY<br>AUTHORITY, et al.,<br><br>    Defendants. | No. 14 CV 9145<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Jeffrey Cochran, a lifelong Ohio resident, drove to Chicago to visit family. Unfamiliar with Illinois's toll highway system, and unable to understand the signs directing him to toll booths, he missed three tolls. He didn't know that he could avoid a fine by paying his missed tolls online or by phone within seven days, so he was assessed $60 in fines ($20 per missed toll). Cochran brought this putative class-action suit against the Illinois State Toll Highway Authority and members of its Board of Directors, alleging that the way tolls and fines are collected in Illinois violates the United States Constitution and Illinois state law.

Cochran's first amended complaint was dismissed because it failed to state a claim. Cochran amended his complaint, and defendants again moved to dismiss. For the reasons discussed below, the second amended complaint does not plausibly allege a constitutional violation; therefore the constitutional claims are dismissed with prejudice. Cochran's state-law claims are dismissed without prejudice.

I. **Legal Standards**

In deciding whether to dismiss under Federal Rule of Civil Procedure 12(b)(6), I construe the complaint in the light most favorable to Cochran, accept as true all well-pleaded facts, and draw reasonable inferences in his favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). To avoid dismissal, the complaint must "state a claim to relief that is plausible on its face." *Yeftich*, 722 F.3d at 915 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Yeftich*, 722 F.3d at 915 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

II. **Facts**[1]

   A. **Illinois's Toll Highway System**

The Illinois State Toll Highway Authority is an administrative agency of the State of Illinois. SAC ¶ 5. The Authority operates Illinois's toll highway system. SAC ¶ 5. In that system, cars equipped with electronic transponders can pass under toll bridges at high speeds while tolls are automatically collected. SAC ¶ 19. But drivers without transponders must slow down and move to designated cash lanes to pay their tolls—using a lane meant for transponders results in a missed toll. SAC ¶¶ 19, 22, 23.

There is a grace period for missed tolls: if paid online or by mail within seven days, it is as if the toll was never missed. SAC ¶ 29. Otherwise, after seven days, a

---

[1] The facts are taken from the second amended complaint [35], which is cited as "SAC."

missed toll becomes a "violation." SAC ¶ 29. If a driver accrues three violations within a two-year period, the Authority mails him a notice saying he owes the tolls plus a $20 fine for each violation.[2] SAC ¶¶ 28–29. The notice informs the driver that he can contest the violations at a hearing. SAC ¶ 29. But the notice warns that "[t]oll evasion is a public, strict liability and vicarious liability violation," and therefore it is no defense that "(1) the violation notice wasn't mailed sooner, (2) the driver did not intend to miss the payment or go through [a transponder] lane, or (3) someone else was driving the vehicle." SAC ¶ 33.

Transponder users can miss tolls too—for example, if the associated credit card has expired. SAC ¶ 31. Unlike cash-paying drivers, transponder users are given a *second* grace period: for a period of time after the notice is mailed, transponder users can avoid fines by paying their missed tolls and updating their account information. SAC ¶¶ 31–32.

Through advertising, the Authority educated Illinois residents on its toll system. SAC ¶ 20. Additionally, instructions are displayed along the highway on overhead signs. SAC ¶ 19. The signs were designed using studies in which, after viewing multiple prototype signs in a computer-simulated driving environment, participants were asked which signs best conveyed the instructions. SAC ¶¶ 24–25. Based on that research, the Authority selected the most visible signs. SAC ¶ 25.

---

[2] Actually, the notice is mailed to the car's *owner*, regardless of whether he or she was the driver who missed the tolls. SAC ¶ 31.

3

### B. Cochran's Violations

In December 2013, Cochran drove from northeast Ohio to Chicago. SAC ¶ 38. When he crossed into Illinois, he received no information about Illinois's toll highway system. SAC ¶¶ 23, 38. Because he was unaware that he had to use designated cash lanes, and because he had trouble understanding the overhead signs, he missed three tolls. SAC ¶¶ 39–40, 42; [40] at 5. After the expiration of the grace period, Cochran received a notice stating that he owed $64.50 (three tolls of $1.50 each, plus three fines of $20 each). SAC ¶ 42.

### III. Analysis

Cochran complains that by collecting fines without adequate notice, the Authority violated his constitutional rights to procedural due process and equal protection of the laws. SAC ¶¶ 9, 67(d)–(e), 76–80, 82–84. Also, in violation of state laws, Cochran contends that the Authority exceeded its powers, breached a contract, and was unjustly enriched. SAC ¶¶ 67(f–g), 85–104.

### A. Procedural Due Process

To bring a procedural-due-process claim, Cochran must allege a cognizable property interest, a deprivation of that property interest, and a denial of due process. *Clancy v. Office of Foreign Assets Control of United States Dep't of Treasury*, 559 F.3d 595, 600 (7th Cir. 2009). Cochran admits that he had a right to a hearing, and that the notice he received informed him of that right. SAC ¶ 33. He complains that a hearing would not have helped him, because toll evasion is a strict-liability offense. SAC ¶ 33; [40] at 6–7. But, as was said when Cochran's previous complaint was dismissed, there is nothing unconstitutional about strict

4

liability in this context. *See Idris v. City of Chi.*, 552 F.3d 564, 565–68 (7th Cir. 2009) (strict liability for owning a car that was driven through a red light, even where owner was not the driver); *Karlin v. Foust*, 188 F.3d 446, 475–78 (7th Cir. 1999) (strict liability for physicians who fail to discuss required topics with patients); *Stepniewski v. Gagnon*, 732 F.2d 567, 570–73 (7th Cir. 1984) (strict liability for violating home-improvement laws, with fines up to $5,000 and imprisonment up to one year); *United States v. Freed*, 401 U.S. 601, 607–10 (1971) (strict liability for possessing an unregistered gun, with fines up to $10,000 and imprisonment up to 10 years).

Cochran—like all others—was given more process than was required: he was given a grace period for each missed toll, and no fine was assessed until his third violation. *See Sutton v. City of Milwaukee*, 672 F.2d 644, 647–48 (7th Cir. 1982) (no due-process violation for impounding cars whose owners had two or more unpaid tickets). Cochran complains that the overhead signs are confusing to drivers unfamiliar with Illinois's system, because the Authority "ignore[d] vast accumulated knowledge about human conditioning gathered through statistical analysis and psychological observation (*e.g.* Bayesian inference, cognitive evaluation, cognitive dissonance, perspective transformation, social learning and attribution theory)." SAC ¶ 26. Maybe, maybe not. Either way, the Constitution is not offended. *See Schor v. City of Chi.*, 576 F.3d 775, 780 (7th Cir. 2009) ("Different jurisdictions often proscribe different types of conduct, and persons entering any specific place do so at their peril—or, to put it more mildly, do so knowing that they are obliged to inform

5

themselves about any relevant rules of the road."). Cochran's procedural-due-process claim is dismissed with prejudice.

### B. Equal Protection

Cochran argues that it violates the Equal Protection Clause to give transponder users a second grace period without offering cash-paying drivers that same grace. SAC ¶¶ 31–32, 83; [40] 8–9. "Equal protection scrutiny is triggered when a regulation draws distinctions among people based on a person's membership in a suspect class or based on a denial of a fundamental right. If either a suspect class or fundamental right is implicated, the government's justification for the regulation must satisfy the strict scrutiny test to pass muster under the Equal Protection Clause. But if neither condition is present, the proper standard of review is rational basis." *Sweeney v. Pence*, 767 F.3d 654, 668 (7th Cir. 2014) (internal marks omitted). Neither a suspect class nor a fundamental right is implicated here, so rational-basis review applies. *See Yerger v. Mass. Tpk. Auth.*, 395 Fed.Appx. 878, 884 (3d Cir. 2010) (applying rational-basis review to a similar claim). That means that Cochran can succeed only if the Authority's system bears no reasonable relation to any proper purpose. *Sweeney*, 767 F.3d at 670.

The Authority argues that it "has a valid interest in promoting transponder use, as it facilitates toll collection and significantly minimizes toll evasion, provides for more efficient use of the roadways, lessens congestion, and lessens the need for resources used to maintain cash toll lanes, such as toll booth attendants." [37-1] at 6–7. Cochran does not contend that encouraging transponder use is improper. SAC ¶¶ 82–83. And the Authority encourages transponder use in other ways, too—it

charges transponder users half-price on tolls (a practice that Cochran acknowledges and does not challenge). SAC ¶ 83; *see Yerger*, 395 Fed.Appx. at 884 (affirming the dismissal of a claim that offering discounts to transponder users violates the Equal Protection Clause, and noting that the defendant took other actions that also furthered its purported interest in improving traffic flow). A second grace period is a reward for being a transponder user, and such favoritism is reasonably related to increasing transponder use. The Authority's system thus "passes the low bar of rational basis review." *Sweeney*, 767 F.3d at 668. Cochran's equal-protection claim is dismissed with prejudice.

### C. Claims Against Individual Board Members

In addition to the Authority, Cochran seeks to hold individual Board members liable for violating the Constitution. *See* [26]. Because he has not plausibly alleged any constitutional violation, and additionally because he has made no specific, non-conclusory allegations about any individual defendant's personal acts or decisions, his claims against the individual defendants are dismissed with prejudice. *See Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011) ("Section 1983 creates liability only for a defendant's personal acts or decisions.").

### D. State-law Claims

In its motion to dismiss, the Authority assumed that jurisdiction over Cochran's state-law claims could be based only on the supplemental-jurisdiction statute, 28 U.S.C. § 1367(a). [37-1] at 7–8. Before Cochran's response brief was due, the parties were directed to address whether jurisdiction was conferred by the Class Action Fairness Act. [38]. Under CAFA, district courts have "original jurisdiction in

7

class actions where: (1) the aggregate amount in controversy exceeds $ 5,000,000; (2) any member of the plaintiff class is a citizen of a state different from any defendant ("minimal diversity"); (3) the primary defendants are not states, state officials, or other government entities against whom the district court may be foreclosed from ordering relief; and (4) the number of members of the plaintiff class is 100 or more." *Hart v. FedEx Ground Package Sys.*, 457 F.3d 675, 679 (7th Cir. 2006) (citing 28 U.S.C. §§ 1332(d)(2), (d)(5)).[3]

In response to the court's direction, neither side argued that CAFA confers jurisdiction in this case. The Authority argued to the contrary ([43] at 6) and Cochran argued only that CAFA "does not preclude" the exercise of *supplemental* jurisdiction ([40] at 10). The party invoking jurisdiction must demonstrate its existence. *Hart*, 457 F.3d at 679. Because neither side argued that CAFA confers jurisdiction, neither side attempted to demonstrate that CAFA's prerequisites are met. For example, although a good faith, uncontested allegation concerning the amount in controversy is generally accepted by courts, *McMillian v. Sheraton Chi. Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009), it is not obvious that Cochran's $100,000,000 demand was made in good faith—no rationale is given for that amount, which is enormous compared to his $60 fine. *See* SAC ¶ 104(b). Cochran

---

[3] Under certain circumstances, the court has discretion to decline CAFA jurisdiction; under other circumstances, it *must* decline jurisdiction. 28 U.S.C. §§ 1332(d)(3)–(4). But absent those circumstances, if CAFA confers jurisdiction, the court cannot refuse to hear the case. *See Baker v. Kingsley*, 387 F.3d 649, 656–57 (7th Cir. 2004) ("It is an abuse of discretion for a district court to remand a federal claim that is properly before it.").

has not demonstrated the existence of CAFA jurisdiction, and so I conclude that CAFA jurisdiction is not present.

Jurisdiction over the state-law claims must therefore be based on supplemental jurisdiction. 28 U.S.C. § 1367(a). But when federal claims are dismissed, a district court should ordinarily decline to exercise supplemental jurisdiction. *See RWJ Mgmt. Co. v. BP Prods. N. Am.*, 672 F.3d 476, 479 (7th Cir. 2012). Indeed, that is what both sides urge. [37-1] at 8; [40] at 10–11; [43] at 6. Given the early stage of the case, and the parties' agreement, the court declines jurisdiction over Cochran's state-law claims, which are therefore dismissed without prejudice.

**IV. Conclusion**

The motion to dismiss [37] is granted. Cochran's state-law claims are dismissed without prejudice. His federal claims are dismissed with prejudice. Enter judgment in favor of defendants, and terminate civil case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 7/15/15